The Chancellor.
On the first of March, 1832, John Davison and Garret D. Wall entered into a verbal agreement, by which Garret D. Wall agreed to let Davison into the possession of the Fithian mill, as it is called, in the city of Trenton, upon the following terms: Davison was to fit it up as a paper mill, and pay as rent the sum of three hundred dollars yearly. Wall agreed, that if at any time Davison would pay, or secure to be paid, as the purchase money, the sum of five thousand dollars, then that he, Wall, would convey to him the mill. It was agreed that whatever machinery was put in the mill should remain there as security for the rent. Davison went into possession, and expended some three or four thousand dollars in putting the mill in operation.
On the 23d of February, 1841, Wall, at the request of Davison, conveyed the mill to the defendant, Henry P. Welling, for the consideration of $5000, which Welling secured by his own bonds and by mortgages on the premises. On the 23d of March, 1841, Welling executed to Davison a deed of trust, by which, after setting out the conveyance from Wall, the manner of securing the purchase money, that it was expressly agreed between Welling and Davison, at the time of the purchase, that if the said Davison should well and truly pay and satisfy the bonds and mortgages given by Welling as the consideration, or indemnify and save harmless the said Welling from all loss and damage by reason of his liability upon the same, &c., lie, the said Welling, would hold the said premises in the following trust: first, that the said Davison should enjoy the premises, for his natural life, for the consideration of one dollar annually,1 that in case of the death of the said Davison, the said premises should be sold at public sale, and the proceeds applied—first, to the payment of any balance of principal and interest which might remain due upon the said bonds and mortgages, and any costs, &c., incurred by said Welling in consequence of his liability; second, to pay to Lathrop & Irwin *292 all such debts which might, at the time of the death of said Davison, be due from him to them, or either of them; third, to pay all debts which might at the time of the death of said Davison be due to any person or persons of the city of Trenton; fourth, the surplus, if any, to be paid over to the widow and children of said Davison. Therefore it was declared, that the said Welling did ratify and confirm the said agreement, and did hold the said property, &c., in trust, &c.
In 1846, this declaration of trust was destroyed by the mutual consent of the parties. It was destroyed in consequence of Davison’s hopeless insolvency, and the manifest impossibility of his Milling the conditions which entitled him to the benefits of the trust.
The complainant is a judgment and execution creditor of Davison. The object of the bill is to subject the mill property to the payment of the judgment debt.
In the first place, it is alleged, that the conveyance to Welling was fraudulent, and was made to him for the purpose of defrauding Davison’s creditors. If this is so, the property must be subjected to the payment of the complainant’s judgment and execution. The court may do this with or without -remunerating Welling for his expenditures, as shall be deemed equitable under the circumstances and most consonant with justice. If the evidence is such as to establish actual and direct fraud, then the conveyance should be declared absolutely null and void; but where it is only constructively fraudulent, it will stand as security, so far as to reimburse and indemnify the grantee.
I do not think the evidence will justify the conclusion, that the transaction between Welling and Davison was a fraud as to Davison’s creditors. Davison was an old man, and, as appears from the business transactions between him and the complainant, without means to do business. He had been carrying on the same business in another mill through the aid of the complainant, the result of *293 which was an indebtedness to the complainant of upwards of three thousand dollars. When he rented this mill of Wall, under an agreement that he was to have a title when he paid or secured §5000, he had just been sold out by the sheriff, and the complainant then had a judgment against him of upwards of §3000. After having been in possession of the mill some nine years, his embarrassment had greatly increased. The whole period seemed to be a continual struggle to keep the wheels of the mill in motion. The complainant had recovered another judgment, of upwards of §1100, for a new debt, contracted by Davison in his efforts to carry on the paper mill. The complainant had taken out six executions against his debtor, and there can be no doubt but that what Davison stated in his testimony is true, that he hardly had sufficient to bxiy bread, and would have suffered but for the kindness of some of his friends. In this condition he was informed by Wall, that he, Wall, was embarrassed, and must have the property settled for in some way. Davison could not buy the property, for he had not the means to buy his daily bread. He was thus compelled to abandon the purchase. It was under such circumstances that the defendant, Welling, purchased the property; and after giving his own personal obligations for the purchase money, executed to Davison the declaration of trust. Davison then made another struggle for life. He could not make enough to pay the rent or keep the mill running. He says he did not make enough to pay the hands. In 1846, he owed Welling upwards of six hundred dollars for rent. Welling had, in the mean time, made large advances of money to refit the mill with machinery, and had paid debts for Davison to an amount exceeding §2000. At this time, §5000 was as much as the mill and machinery were worth. Thus it appears that the creditors had lost nothing, but that Welling had actually embarrassed himself in endeavoring to help Davison, and put him in a way to pay his debts. In the midst *294 of these embarrassments, another judgment was about to be entered up against the old man, and it was said that the declaration of trust might make trouble. Davison went to his principal creditor, the complainant, and consulted him in reference to the declaration of trust, and the complainant told him there was a question whether a judgment creditor might not sell his interest in the property. It was then that the declaration of trust was destroyed.
I cannot see any fraud in this transaction. It really seems to have been a matter of charity, upon the part of Welling, to afford to Davison some way of living. No creditor was injured by it. There was no property of Davison covered up in the name of Welling. Davison never had any title in the property, nor did he ever pay one cent towards the consideration money. If Davison had originally paid any part of the purchase money, or if, after the conveyance to Welling he had paid it, or by expenditures had enhanced the value of the property, there might be some foundation for the charge of fraud. There was nothing done by either of the parties that looked like a disposition to defraud a creditor. The complainant was the principal creditor. Nothing was concealed from him. No creditor was defrauded, or could be defrauded, by the transaction. It is true the motive for giving up the declaration of trust was the anticipated difficulty from judgment creditors. But if such difficulty was apprehended, was it not right and reasonable that Welling should be relieved from further trouble ? Davison was a mere volunteer, and it was a matter of duty, as well as of right, that he should not unnecessarily involve an innocent person who had befriended him.
But the complainant asks relief upon another ground. He says Davison had an interest in this property; it was held in trust for,him, and that that interest the complainant is entitled to have applied to satisfy his execution.
Davison never had the legal title to this property. At *295 law, a judgment and execution constitutes no lien upon a mere equitable interest. A court of equity may aid the judgment creditor in reaching that interest, and secure to him a preference to which by his diligence he has entitled himself.
On the 16th of May, 1829, the complainant recovered judgment against Davison. In May, 1834, he caused an execution to be levied upon all the defendant’s interest in the mill. What interest did the defendant then ha ye ? He was then the tenant of Wall, who had agreed with him, that if he would pay him $5000 he should have a legal title to the property. I said the agreement was a verbal one, but the evidence leaves it uncertain. But admit it was in writing, and was an agreement the specific performance of which the defendant could enforce. Admit that the plaintiff in the judgment could have come into a court of equity and have taken the place of the defendant, and have acquired his interest by enforcing the specific performance of the agreement for I am not disposed at this day, when the legislature is aiding by law, in every way, execution creditors to reach the property of their debtors, to shorten the arm of this court in favor of a creditor asking its assistance. Then, what equity had the execution creditor ? He certainly had no more than the debtor himself. The debtor had not paid a dollar; he had not paid up his rent even ; so that he was not in fact in a position to demand a specific performance. Were Wall’s hands tied up by the execution? Was he to see this property crumble to ruin before his eyes, and because he had agreed to convey the property upon certain conditions, which had never been performed, wait the pleasure of the execution creditor to assume the position of the alleged vendee ? The complainant slept over his rights for nine years, and then Wall conveyed the property to Welling. He then delayed six years longer before he filed his bill. A court of equity will exercise a sound legal discretion in decreeing a specific performance. To deter *296 mine that this execution is entitled to the interest which Davison had in the property, I must declare that Wall had no right to make the sale to Welling, and that the complainant’s delay of fifteen years was reasonable. This would not only be aiding the creditor, but be making the interest of all others subservient to his, no matter at what sacrifice. Wall had a perfect right to make the conveyance, and by it the complainant lost all equitable lien, if he had any, in the property by his negligence and delay.
But the complainant obtained another judgment in 1836, and caused an execution to be issued upon it in 1842, and an alias execution in 1846. The first execution was issued while the declaration of trust was in existence; the second execution was issued after the declaration was destroyed. The complainant insists that the destruction of the declaration did not impair his rights, which had become vested. As a general principle, where an execution creditor has acquired an equitable lien, it cannot be destroyed or impaired by the voluntary act of the debtor or of his trustee.
When Welling took the deed in 1832, he paid the consideration money. He executed a declaration of trust to the effect, that if Davison would repay him the purchase money with interest, and indemnify him for all costs, charges, and expenses, then that Davison might hold the property during his life at an annual rent of.one dollar; that at Davison’s death Welling would sell the property, and pay certain specified debts, and the surplus he would hold for the benefit of Davison’s wife and children. The complainant knew of this trust. Davison remained in possession for six or seven years. He was not only unable to reimburse Welling, but allowed upwards of one thousand dollars interest money to accumulate. He contracted debts to an amount of upwards of two thousand dollars, which Welling was obliged to pay. Welling, for his own safety and security and for the preservation of the property, was compelled to make expenditures of upwards *297 of six thousand dollars upon it. The creditor stood hy from 1842 to 1846. He sees Davison abandon all hope of retaining any interest in the property. He waits until August, 1847, and then files this bill. I repeat again, the aspect of this case would be changed if any of Davison’s money was in the property. But he was a mere volunteer, and had not advanced a dollar in the creation or preservation of the trust.
But again, the trust not being void and fraudulent as to creditors, the complainant can only claim the interest of the debtor in the trust. What is that interest ? It is nothing more than the privilege, after the trustee is reimbursed, of holding the property during life at an annual rent of one dollar. But this the complainant is unwilling to take. He claims the whole property after the trustee’s claims upon it are satisfied. As the trustee had a right to create the trust, the trust property being the creature of his own funds, the creditor, if he can take at all, must take in conformity to, and not in violation of the trust.
I do not mean to countenance the idea, that a man who is embarrassed in his circumstances may enter into business, and purchase property, and make arrangements for its future security by covering it up in the nature of a trust. That raises another question, one we have already considered, a question of fraud. If the debtor had ever paid any money upon this property, to the extent of such payment the court might subject the property to the execution, on the ground of its being the debtor’s own earnings, to which his creditors are entitled.
There is no evidence in the case to justify the belief that this property would bring enough to reimburse Welling for his outlays. To subject him to an account under such circumstances, in the effort to reach any equitable interest Davison might have, would be oppressive, and I can see nothing in the case to warrant it.
As to the personal property, in regard to which the complainant asks the interference of the court, if it belongs *298 to the complainant as owner, as he has endeavored to show, no aid of this court is required; the complainant has his remedy at law.
In any view I have heen able to take of the case, I do not see that the complainant is entitled to relief. This bill must be dismissed with costs.